**Frank RUBIN, Appellant,**

v.

**Maurice B. POLUNSKY et al., Appellees.**

**No. 14072.**

Court of Civil Appeals of Texas.

San Antonio.

March 6, 1963.

Rehearing Denied April 3, 1963.

Glosserman, Alter & Smith, San Antonio, for appellant.

Levey & Goldstein, San Antonio, for appellees.

BARROW, Justice.

This is a suit by landlords of business property to collect rent allegedly owed for the last six months of a three-year extension agreement, or, in the alternative, for a holding over under the original lease. After a non-jury trial, judgment was rendered in favor of plaintiffs for the sum of $1,500.00,

which the trial court found defendant owes under either theory.

There are some undisputed facts: Appellees are Maurice B. Polunsky, Joe Signoff and Sam Mazer, and the wife of each. The three men were appointed as independent executors of the estate of their father-in-law, Max Mazur, deceased, whose will was admitted to probate on January 2, 1951. The original lease called for rent of $250.00 per month, and expired on July 15, 1958. Around the middle of June, 1958, appellant and appellees verbally agreed to a three-year extension of this lease, upon the same terms. Signoff prepared a written extension agreement which was signed in duplicate by the three men as independent executors and by their wives. The duplicate originals of the extension agreement were then delivered to appellant for his signature. Sometime after receiving the extension agreement from Signoff, appellant signed both copies but did not deliver either copy to appellees. Instead, in October, 1958, he delivered both signed agreements to his attorney for approval. Appellant's attorney had several objections to the agreement as prepared by lessors and executed by all parties. There is a conflict in the testimony as to subsequent events, although it is undisputed that both executed copies of the extension agreement remained in possession of appellant's attorney until the trial of this case. Appellant remained in possession of the premises and continued to make the monthly payments required under the lease agreement, for thirty months of the extension term. Appellant then vacated the premises and refused to pay further rent.

Appellant's attorney testified that a week or two after receiving the extension agreement, he talked to Signoff over the telephone and advised Signoff that he made the following objections: The three men would be required to sign "pro forma" in addition to their signatures as independent executors; B. A. Wiedermann would be required to sign as independent executor; and acknowledgments would be required of all lessors. He testified that he heard nothing further from any of the lessors about this extension agreement until the spring of 1961, when the controversy had arisen. Signoff testified that he didn't recall the specific objections made by appellant's attorney, but that he advised the attorney to return the extension agreement if it was not satisfactory. Polunsky testified that he talked to appellant's attorney, and was advised that the agreement was fully signed and would be delivered to lessors.

The original lease agreement contained the following clause concerning hold-over by lessee: "It is agreed and understood that if Lessee continues in possession of the demised premises after the termination of this lease and against the will of Lessors, Lessee shall be considered as a tenant from month to month at a monthly rental of Three Hundred ($300.00) Dollars payable in advance during such month to month tenancy which may be terminated at any time by Lessors."

The trial court made findings of fact substantially as follows: The parties verbally agreed to the extension for a three-year period upon the same terms, and all lessors signed the extension agreement; shortly thereafter, appellant signed the agreement; several months after appellant signed, he delivered it to his attorney who made requirements which were never complied with by lessors; it was contemplated that one of the duplicate originals of the extension agreement would be returned to lessors, but it was not returned; appellant remained in possession for thirty months under the extension agreement, and lessors consented to his possession in their belief that the extension agreement had been executed by him; B. A. Wiedermann did not qualify as an executor of the estate of Max Mazur, deceased, and the three sons-in-law were the only qualified and acting executors of this estate at times relevant to this case. The trial court concluded that the extension agreement signed by lessors became binding upon appellant when delivered to him and signed by him; further, that appellant having occupied the leased premises under the

agreement for thirty months, is estopped to deny the validity of the lease agreement. The trial court further concluded that if lessors were not entitled to recover the $1,500.00 under the extension agreement, they would be entitled to this sum by appellant's holding over for thirty months under the original lease.

■ Appellant asserts that the extension agreement was not a valid contract, under the statute of frauds, as it was never signed by B. A. Wiedermann as one of lessors, and, although signed by appellant, the agreement was never delivered to lessors. Sec. 240, Vernon's Ann.Tex.Stats., Probate Code, requires that all executors "who have qualified as such and are acting as such," join in conveyance of real estate unless the probate court should authorize less to act. It was stipulated that, although appointed in 1951, Wiedermann had never taken the oath of office as required for an independent executor to qualify under Sec. 189, of the Probate Code. There was evidence from the other lessors to support the trial court's finding that Wiedermann was not "acting" as executor at any relevant time. In this situation we do not believe the extension was unenforceable against lessors for lack of Wiedermann's joinder, even though he joined in the original lease. Roberts v. Stewart, 80 Tex. 379, 15 S.W. 1108; Coy v. Gaye, Tex.Civ.App., 84 S.W. 441, no writ history.

■■ We do not find it necessary to pass upon appellant's point concerning the question of delivery to the lessors of the extension agreement. The evidence supports the trial court's finding that after receipt of the extension agreement, signed by lessors, the appellant remained in possession of the premises, made the monthly payments required by the extension agreement, and thereby accepted the benefits of the extension agreement for thirty months. Under these facts and findings, the extension agreement is not within the statute of frauds, and appellant cannot assert any invalidity of the written extension agree-

ment. The rule in Texas is, that a contract in writing signed by one party and expressly accepted orally by the other, or the terms thereof performed and the benefits thereof accepted, is in law the written contract of the parties and binding on both. Martin v. Roberts, 57 Tex. 564; Chavez v. Goodman, Tex.Civ.App., 152 S.W.2d 826, no writ history; Burke v. Shafer, Tex.Civ.App., 189 S.W.2d 444, writ ref. w. o. m.

■ The trial court found that regardless of whether an extension agreement was made, appellant would still owe lessors $1,500.00 under the hold-over provisions of the original lease; i. e., thirty months at an increase of $50.00 per month. Appellant asserts that this finding is incorrect, as the holding over was not against the will of lessors. The finding of the trial court is supported by the testimony of lessors, that they would not have permitted appellant to remain in the premises if they had not believed the extension agreement was executed by appellant.

The judgment is affirmed.